IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARIA P. GAETE** *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> **ARCTIC GLACIER PREMIUM ICE,** <br><br> *Defendant*. | Civil Action <br><br> No. 24-cv-1396 |

**Goldberg, J.**                                                                                   February 27, 2025

**MEMORANDUM OPINION**

    This Opinion addresses Plaintiffs' Motion to Remand, filed after Defendant removed this case to federal court. Resolution of this Motion requires that I examine Defendant's "nerve center," an analysis that has become trickier given the advent of remote work.

    Plaintiffs are co-administrators of the estate of decedent Blair Smith who have sued "Arctic Glacier Premium Ice" for wrongful death in the Court of Common Pleas of Philadelphia County. An entity calling itself Arctic Glacier USA, Inc. ("Defendant"), who does business as "Arctic Glacier Premium Ice," removed the case to this Court. Plaintiffs argue that removal was improper under 28 U.S.C. § 1441(b)(2), which prohibits removal of civil actions where jurisdiction is premised on diversity of citizenship and any defendant is a citizen of the state where the lawsuit was filed—here, Pennsylvania. Defendant disagrees, asserting it is headquartered in North Carolina.

1

I.      **JURISDICTIONAL BACKGROUND**[1]

Plaintiffs—who are residents of New York and Florida—filed this lawsuit in state court on March 4, 2024. (ECF No. 35 ¶¶ 1-3.) Plaintiffs served and Defendant accepted service at an address in Bala Cynwyd Pennsylvania. (Id. ¶ 69.)

Plaintiffs present the following evidence to show Defendant is a citizen of Pennsylvania:

- "All of [Defendant's] publicly available websites and social media accounts from March of 2024 identify Pennsylvania as its headquarters." (Id. ¶ 29.) These websites contain no mention of "North Carolina."
- Defendant maintains a "mailing address . . . in Sharpsburg, Pennsylvania . . . where all of the Defendant's checks in the U.S. go." (Id. ¶ 35.) "Defendant's website lists [the Sharpsburg] address as its administrative offices and the location to send any HR inquiries." (Id. ¶ 36.) As such, "critical administrative functions such as banking, depositing monies, human resource inquiries, and mail sorting, all [] occur in Pennsylvania." (Id. ¶ 37.)
- Defendant's corporate filings in Connecticut, Maryland, Nebraska, Massachusetts, and Vermont all denote that the Bala Cynwyd address is Defendant's principal place of business. (See ECF No. 35-10, 35- 13, ECF 35-14, 35-16. 35-17.)

Defendant presents the following in opposition to remand:

- Defendant is incorporated in Delaware. (ECF No. 36 ¶ 5.)
- Defendant's CEO is Peter Laport. On May 1, 2021, Mr. Laport signed a lease for a home in North Carolina, which expired on April 30, 2024. (Id. ¶ 28(a).) On March 14, 2024, Mr. Laport purchased a home in Mooresville, North Carolina. (Id.) Mr. Laport has neither lived in Pennsylvania nor has owned property or rented property in Pennsylvania. (Id.)
- When Defendant recruited Mr. Laport to be its CEO, he made it clear that "he intended to run [business operations] from his home in North Carolina." (Id. ¶ 28(b).) This was confirmed by both Mr. Laport and Matthew Coles, the managing director for the Carlyle Group—which indirectly owns Defendant. (See id.; see also Aff. of Matthew Coles (ECF No. 27-5) ¶¶ 1-2.)
- On March 20, 2023—nearly a year before this lawsuit was filed—Mr. Laport began his role as Defendant's President and CEO. (ECF No. 36 ¶ 28(c).) As part of his role, he "perform[s] the duties and responsibilities of the Executive's position and such other duties and responsibilities on behalf of" Defendant. (Id.) Since that time, Mr. Laport "has run the company from his home office in North Carolina." (Id. ¶ 28(d).) This was confirmed by Mr. Laport, Chief

---

[1] These facts are taken from Plaintiffs' Second Motion to Remand (ECF No. 35), Defendant's Response in Opposition (ECF No. 36), and the attached exhibits. The Parties have been through two rounds of jurisdictional discovery on this issue.

- Human Resources Officer Elise Doyle, General Counsel Travis Bonnell, and Chief Financial Officer Stephanie Choudri.  (Id.)
- In his role as CEO, Mr. Laport sets company strategy, hires and fires employees, and is responsible for the budget from "end to end each and every day."  (Id. ¶ 28(e).)  More specifically, he is in charge of "hiring and firing all members of the Executive Team and anyone with a prominent position" and those decisions are made from North Carolina.  (Id. ¶ 28(g).)  He conducts "weekly one on one meetings from North Carolina with his executive team members where he lays out the directions and goals for the company and provides feedback."  (Id. ¶ 28(j).)
- Mr. Laport is also a member of Defendant's board and "sets the agenda for each Board meeting, and runs the board meetings from North Carolina."  (Id. ¶ 28(p).)
- In March 2023, Mr. Laport "made the decision to close the Bala Cynwyd office and . . . informed the 8-12 employees at that office, that effective immediately, they were fully remote in their job."  (Id. ¶ 31.)  Defendant points to emails confirming that it paid some $244,955 to terminate the Bala Cynwyd office lease as of April 10, 2023.  (ECF No. 36-8 at 92-93 of 95.)  On December 20, 2023, Mr. Laport sent a company-wide announcement explaining that the Bala Cynwyd office was no longer accepting mail, and that the new corporate address "for all corporate correspondence" was the Sharpsburg, Pennsylvania location.  (Id. at 94 of 95.)
- Defendant explains that the Sharpsburg mailing address is only the site of a "digital mailroom service" and a "P.O. Box."  (ECF No. 36 ¶ 35.)  This digital mailroom—which is operated by third-party "Exela Technologies"—"open[s], scan[s], and virtually send[s] all mail to the appropriate company recipient."  (Aff. of Stephanie Choudri ¶¶ 10-13.)

## II.  LEGAL STANDARDS

A civil action—based in diversity jurisdiction—filed in state court may be removed if the Parties are completely diverse.  See 28 U.S.C. § 1441(b)(1).  However, under the Forum State Defendant Rule, "[a] civil action otherwise removable solely on the basis of [diversity] jurisdiction . . . may not be removed if any of the . . . defendants is a citizen of the State in which such action is brought."  Id. § 1441(b)(2).  "[A] corporation, is a citizen of (a) the state(s) where it is incorporated and (b) the state where it has its nerve center; that is, its headquarters."  Hensley v. CAN, No. 19-2837, 2019 WL 5088461, at *4 (E.D. Pa. Oct. 10, 2019) (internal citations omitted).  Thus, if a corporate defendant is sued in state court where it is either incorporated, or where it has

its principal place of business, it may not remove on the basis of diversity jurisdiction. See Holley v. Teva Pharms. USA, Inc., No. 20-1613, 2020 WL 4470617, at *1 (E.D. Pa. Aug. 4, 2020).

A defendant's "principal place of business" is where its "nerve center" is located. Gentry v. Sikorsky Aircraft Corp., 383 F. Supp. 3d 442, 450-51 (E.D. Pa. 2019) (citing Hertz Corp. v. Friend, 559 U.S. 77, 80-81 (2010)). A nerve center is "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities," typically "found at a corporation's headquarters." Hertz Corp., 559 U.S. at 80-81. The nerve center is "more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat." Id. at 97. Moreover, a nerve center is "'a single place,' meaning [it] is *static*, regardless of the conduct at issue in a particular case." Gentry, 383 F. Supp. 3d at 451 (citing Hertz, 559 U.S. at 79). It is Defendant's burden to demonstrate the propriety of removal jurisdiction. See Dent v. Amresorts, L.P., No. 24-6354, 2025 WL 300604, at *2 (E.D. Pa. Jan. 24, 2025); see also Return on Intelligence, Ltd. v. Shenkman, No. 16-317, 2017 WL 3310684, at *4 (E.D. PA. Aug. 3, 2017) (explaining that the moving party must establish "complete diversity" by the "preponderance of the evidence") Defendant must support its contention with "competent proof." Hertz Corp., 559 U.S. at 96-97.

**III. DISCUSSION**

It is undisputed that Defendant is incorporated in Delaware. Thus, I must only determine the location of Defendant's "nerve center."

In setting out the "nerve center" test, the Supreme Court explained that "there will be hard cases . . . in this era of telecommuting [because] some corporations may divide their command and coordinating functions among officers who work at several different locations, perhaps communicating over the Internet." Id. at 95. Because Defendant's entire management structure is

4

decentralized and there appears to be no brick-and-mortar headquarters, this is one of those "hard" cases.

A.  **Defendant's Connection to Pennsylvania**

Plaintiffs point to Defendant's websites, LinkedIn pages, as well as state registration and tax filings to support their contention that Defendant held itself out as headquartered in Pennsylvania. While I agree that these filings show Defendant maintained an address in Bala Cynwyd[2] or Sharpsburg Pennsylvania, the listing of an address alone is not sufficient to establish Pennsylvania as Defendant's nerve center. See Hertz Corp., 559 U.S. at 97 ("[W]e reject suggestions that the mere filing of a form like the Securities and Exchange Commission's Form 10–K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'"); Bethman v. Bell Flavors and Fragrances, Inc., No. 19-4735, 2020 WL 1955593, at *2 (E.D. Pa. Apr. 23, 2020) ("[A]n address alone is insufficient to establish corporate citizenship.").

Plaintiffs also contend that Defendant's mailing address—a Sharpsburg Pennsylvania location—is proof that Defendant directs its administrative functions from Pennsylvania. I also disagree with this contention. Defendant has presented unrebutted evidence that the Sharpsburg address is merely the location of a "digital mailroom service." (ECF No. 36-4 ¶¶ 10-11.) In essence, the Sharpsburg address—which is operated by a third party—is where Defendant's mail and checks are sorted for forwarding. Accordingly, because the Sharpsburg location is nothing "more than a mail drop box" or a third-party sorting site, it cannot serve as Defendant's nerve center. See Hertz, 559 U.S. at 97.

---

[2] I note that Defendant's Chief Accounting Officer averred that all filings after December 15, 2023 listing a Bala Cynwyd mailing address are "inaccurate." (Aff. of Stephanie Choudri ¶ 21.)

Defendant has also presented proof that the Bala Cynwyd address has been inactive since 2023. Only weeks after Peter Laport took over as Defendant's CEO in 2023, he made the decision to shutter the Bala Cynwyd office, paying some $245,000 to terminate the lease and shifting all employees who previously worked there to fully remote positions. (See ECF No. 36-8 at 92-93 of 95; Dep. of Elise Doyle at 15-16.)[3] In March 2023, it appears that only one employee—who was not an officer of the company—would collect mail from the Bala Cynwyd office once per week. In December 2023, Laport emailed the entire company, explaining "there is no longer a need for a physical corporate office location." (Id. at 94 of 95.)

These facts undermine Plaintiffs' argument that Defendant operated its business from Pennsylvania at the time this suit was filed. That Defendant publicly listed addresses in Pennsylvania and Sharpsburg does not adequately rebut the "competent proof" provided by Defendant. As the Hertz Court explained, "if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." 559 U.S. at 96. Thus, the relevant question is where did Defendant's officers direct the company's activities?

### B.   Center of Direction Control and Coordination

Although I have found neither Third Circuit nor Eastern District of Pennsylvania case law expressly addressing the nerve center test in the context of remote work, several Courts in California have considered this issue. See Vazquez v. DataRobot, Inc., No. 22-7619, 2023 WL 6323101, at *7 (N.D. Cal. Sept. 28, 2023) (collecting cases) ("The present case raises the difficult question of how to apply the nerve-center test in the post-pandemic telecommuting context.").

---

[3] Plaintiffs attempt to undermine the lease termination date, pointing to an email which indicates the lease was set to expire on March 31, 2024, after this lawsuit was filed. (ECF No. 35-1 at 12.) Even if the lease expired in March 2024, the relevant question is whether Defendant was being directed and controlled from that office.

Vazquez and the cases it cites are instructive and provide "guidance for the situation where the corporation's direction and control is divided across multiple states." Id. at *8. I thus look to the number of acting officers, where they were located, and where the "lion's share" of a corporation's decision making took place. Id. at *8-*9 (citing Pool v. Hoffman-La Roche, Ltd., 386 F. Supp. 3d 1202 (N.D. Cal. 2019); Benchmark Invs., Inc. v. PAVmed Inc., No. 20-10888, 2021 WL 5967918, at *3 (S.D.N.Y. Dec. 16, 2021); Colmenares v. Paedae, Inc., No. 21-5221, 2021 WL 4934976 (C.D. Cal. Oct. 22, 2021)).

Defendant has provided an organizational chart which appears to show that all corporate officers report directly to Peter Laport. (See ECF No. 36-8 at 42 of 42.) As of April 8, 2024, none of these officers worked in the same state and only one of them worked in Pennsylvania. (See id.) Accordingly, I cannot simply look to where a plurality of the officers are located to determine the location of Defendant's nerve center. Cf. Colmenares, 2021 WL 4934976, at *4 (finding Defendant's forum was Ohio because "a plurality of its officers with strategic, decision-making, and financial authority" lived there and because a "substantial majority of the company's employees report to the officers in [Ohio]").

I next ask where the "lion's share" of Defendant's decision-making was made. "One key consideration is where the president or chief executive officer reports to work." Aizen v. Am. Healthcare Admin. Servs., Inc., No. 18-15195, 2019 WL 4686811, at *5 (D. N.J. Sept. 26, 2019); see also Pool, 386 F. Supp. 3d at 1221 (explaining a CEO's "governance role would appear to be highly significant."). I also consider from which location Defendant's executives had the "responsibility to direct and develop plans, strategies, budgets and goals, and to oversee significant corporate decisions, and set corporate policy." Gentry, 383 F. Supp. 3d at 445 (internal quotations

7

and citations omitted). My review of the record indicates that Peter Laport controls and directs Defendant's company from North Carolina.

It is undisputed that Peter Laport is Defendant's CEO and has lived and worked in North Carolina since before he was hired in March of 2023. As discussed in detail above, Mr. Laport is responsible for firing, hiring, strategy, budgeting, and more. He also conducts weekly check-ins with his management team from his home in North Carolina. Moreover, this is not a case where Mr. Laport delegated his control or direction of the company to employees in Pennsylvania. Cf. Brewer v. SmithKline Beacham Corp., 774 F. Supp. 2d 720, 730 (E.D. Pa. 2011) (explaining that where Defendant's board of directors and managers "delegated the direction, control and coordination of LLC to managers who operate from Philadelphia, [they] effectively transplanted the vast majority of its 'brain' or 'nerve center' to its managers in Philadelphia."). Instead, it appears he maintains full control of the company from North Carolina.

Plaintiffs attempt to cast doubt on this evidence by pointing to alleged contradictions in deposition testimony, the level of control Laport exercises over the company, and Laport's lack of knowledge regarding the filing of certain business documents.[4] Specifically, Plaintiffs allege that Laport does not actually direct or control Defendant's company because he "needs the agreement and alignment of the Carlyle Board"—an investment firm—"for any major decisions." (ECF No. 35-1 at 9.) Even if Plaintiffs are correct, there is no evidence in the record indicating that the Carlyle Board makes decisions from Pennsylvania. Plaintiffs' questioning of Defendant's

---

[4] Plaintiffs also argue that "Defendant has not produced a single document or other credible evidence to support its position aside from the testimony and affidavits of their hand-picked witnesses." (ECF No. 35 ¶ 23.) I note that I only ordered a second round of jurisdictional discovery—including the depositions of three previously undisclosed witnesses—because Plaintiffs expressed some interest in deposing these witnesses. (See ECF No. 29 at 3 of 4 ("Defendant provided this evidence to Plaintiffs only through their opposition briefing . . . . [If disclosed earlier,] Plaintiffs would [have] . . . at a minimum, request[ed] the depositions of the affiants.").) Moreover, depositions and affidavits are exactly the type of evidence I must rely on in making this determination. See Gentry, 383 F. Supp. 3d at 448 n.6 (explaining previous Order which set out rules for depositions regarding the "nerve center" question).

evidence does not by itself create the type of doubt favoring remand.  See Wilmington Trust Co. v. Boeing Co., No. 20-402, 2020 WL 4004575, at *5 (W.D. Wash. June 8, 2020) ("[W]hile plaintiffs posit [] that the Court's inquiry should focus on [the] Board of Directors, and not on [] individual executives . . . , they do not proffer evidence that focus would support finding any location other than Chicago as [defendant's] nerve center.").  Instead, without more, I find that Defendant has shown by a preponderance of the evidence that Laport directs and controls Defendant's activities from North Carolina.

Finally, I disagree with Plaintiffs' premise that ruling in Defendant's favor will "swallow the nerve center test in Hertz and allow parties to engage in jurisdictional manipulation."  (ECF No. 35 ¶ 134.)  This suit was filed in March 2024.  Defendant's decision to close the Bala Cynwyd office and order all employees to work remotely was made as early as March 2023 or as late as December 2023.  Importantly, Defendant's CEO has never lived or worked in Pennsylvania.  It is unclear how Defendant would have the foresight—one year before the filing of this suit—to hire a CEO from North Carolina and shutter its Pennsylvania office to create complete diversity.

### IV.     CONCLUSION

Based on the foregoing, I find that Defendant is incorporated in Delaware and that its officers direct, control, and coordinate the corporation's activities from North Carolina.  The Parties are thus diverse, removal is proper, and I will deny Plaintiffs' Motion to Remand.

An appropriate Order follows.